Argued September 7, 1972, reversed and remanded April 26, 1973

FINDLAY, *Appellant, v.* COPELAND
LUMBER COMPANY ET AL,
*Respondents.*

509 P2d 28

*George M. Joseph,* Portland, argued the cause for appellant. On the briefs were Bemis, Breathouwer & Joseph and Pat McMahon.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondents. On the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe and James B. O'Hanlon.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

REVERSED AND REMANDED.

McALLISTER, J.

This is a products liability case in which plaintiff, who was injured in a fall, claimed that his fall was caused by the collapse of an aluminum ladder on which he was standing. Defendant R. D. Werner Co. ("Werner") manufactured the ladder and defendant Copeland Lumber Company ("Copeland") sold it to plaintiff. A third defendant, General Aluminum Products Co., is no longer involved in the action. Plaintiff

produced evidence that the ladder collapsed because a rivet hole had been drilled off-center, substantially reducing the ladder's load-bearing capacity,[1] while defendants' evidence tended to prove that the misaligned rivet hole was not the cause of the ladder's collapse. The case was submitted to the jury on the theory of strict liability on the part of both defendants, and, as to defendant Werner, on the alternative theory of negligence. The jury returned a verdict for both defendants, and plaintiff appeals. We reverse.

The trial court instructed the jury as follows:

"Now, as to plaintiff's first cause of action against the defendants [the strict liability count] the defendants allege that the plaintiff, Mr. Findlay, was himself negligent in that he:

"1) Placed said ladder on uneven ground;

"2) Failed to test the ladder as to its stability and balance before using it;

"3) Used the ladder so as to cause an over-

---

[1] "Q  Now, Mr. Allen, taking a man on the third rung there, approximately 160 pounds, and that ladder having been previously in use for approximately 14 months, normal use as a masonry contractor, and the ladder being approximately 14 months old, do you have an opinion as to the cause of this ladder collapsing?
"A  Yes, I do.

"Q  What is it?
"A  An area of the metal was simply not enough to support this load and the ladder broke.

"Q  An area of metal you are talking about is where?
"A  That small area through the inside of the rivet.

"Q  Can you point that out with your pointer?
"A  This small area of the inside of the rivet that is left because the rivet is off center (indicating).

"Q  That ladder, with the rivet being off center, what condition would you say that ladder would be in?
"A  I would say it is defective.

"Q  And would it normally be unsafe for a user in that condition as it is with the rivet being off center?
"A  Yes."

balance and thereby causing all the weight to be placed on one side; and

"4) Failed to maintain a proper lookout while using the ladder.

"If you find from the evidence in this case that any of said allegations have been established by the evidence and if you further find that a reasonably prudent person, acting under the same or similar circumstances would not have so acted, then the plaintiff, Mr. Findlay, would be negligent in that particular.

"If you further find that such act or acts were the proximate cause of plaintiff's accident and injury, then the plaintiff cannot recover and your verdict should be in favor of both defendants, the R. D. Werner Co., and the Copeland Lumber Company."

Plaintiff excepted to this instruction on the ground that the defense of contributory negligence was not applicable to the strict liability count, and on appeal assigns the above instruction as error.

This case is the first in which we have had occasion to consider the general question of what conduct on the part of a plaintiff will bar recovery in a strict liability action for injuries caused by a defective product. We have adopted Restatement of Torts 2d, § 402 A, as the standard of a seller's strict liability. *Heaton v. Ford Motor Co.,* 248 Or 467, 470, 435 P2d 806 (1967). There is no provision in § 402 A itself for any defense based on the conduct of the injured user or consumer. The Comments, however, contain certain guidelines. The Comments clearly state that the user's negligent failure to discover a defect, or to take precautions against the possibility of its existence, is not a defense to a strict liability action. On the other hand, a user who discovers the existence of a defect and,

although aware of the danger, unreasonably continues to use the product, cannot recover.[2] Another type of conduct by the plaintiff which may bar recovery is recognized in Comment *h*, which provides that the seller is not liable if the product is safe for normal handling and consumption, and the injury results from abnormal use.[3] Misuse of the product as a possible bar to recovery was recognized in *Anderson v. Klix Chemical*, 256 Or 199, 208, 472 P2d 806 (1970).

■ This court disagrees about the theoretical basis for the seller's strict liability for the sale of a defective product. Our disagreement is expressed in the opinions filed in *Markle v. Mulholland's, Inc.*, decided this day, and there is no need to repeat that discussion in this case. It is sufficient to say that, regardless of the underlying theory, we are in agreement that conduct by the user which does not amount to abnormal use of the product, or to unreasonable use with knowledge of the product's dangerous and defective condition, should

---

[2] "*n. Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

[3] "A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling, as where a bottled beverage is knocked against a radiator to remove the cap, or from abnormal preparation for use, as where too much salt is added to food, or from abnormal consumption, as where a child eats too much candy and is made ill, the seller is not liable. * * *"

not bar recovery in this type of case. The seller's strict liability, as formulated in § 402 A, is a means of compensating the user of a defective product for injuries which are caused by that defect. A user who neither mishandles the product nor voluntarily and unreasonably uses it after learning of its dangerous condition should not be deprived of this protection on account of incidental carelessness, even though it plays some part in the accident, if in fact a defect in the product is a proximate cause of his injuries. Our conclusion finds support in the following cases. *Bachner v. Pearson,* 479 P2d 319 (Alaska 1970); *Williams v. Brown Manufacturing Company,* 45 Ill 2d 418, 261 NE2d 305 (1970); *Keener v. Dayton Electric Manufacturing Company,* 445 SW2d 362 (Mo 1969); *Pizza Inn, Inc. v. Tiffany,* 454 SW2d 420 (Tex Civ App 1970).

■ When we examine the specifications of contributory negligence which were submitted to the jury in this case it is clear that the verdict and judgment cannot be affirmed. The second and fourth specifications—failing to test the ladder before using it and failing to maintain a proper lookout while using the ladder—in no sense involve the kinds of conduct which bar recovery under § 402 A. Yet the jury was instructed to find for both defendants if plaintiff was negligent in any of the four particulars and that negligence was a cause of his injuries. It is impossible for us to determine whether this instruction affected the jury's verdict. As it may have done so, we must reverse.

■ Defendants argue that these specifications of contributory negligence were properly submitted to the jury as a defense sounding in "assumption of risk." Their argument totally misconstrues the assumption of risk concept, which applies only when the user of

the product is aware of the danger created by the product's defective condition and, nevertheless, unreasonably proceeds to use it. There is no evidence that plaintiff was aware of the alleged defect in the ladder, and the jury was not instructed that defendants' contributory negligence defense depended on that knowledge.

■■ Defendants further contend that the contributory negligence instruction properly submitted the issue of plaintiff's misuse of the ladder. As we understand Comment *h* to § 402 A, "abnormal" use does not mean every instance of negligence, however slight, in connection with the use of the product. The product must be safe for "normal" handling and consumption. Misuse, to bar recovery, must be a use or handling so unusual that the average consumer could not reasonably expect the product to be designed and manufactured to withstand it—a use which the seller, therefore, need not anticipate and provide for. We need not decide, in this case, whether the evidence justified the submission of misuse or abnormal use to the jury. It is enough that we are satisfied that the instruction as given was totally inappropriate for that purpose. If, on retrial of this case, the question of abnormal use is submitted to the jury, the instructions should provide a proper definition of the term along the above lines. The traditional contributory negligence instruction, requiring plaintiff's behavior to conform to that of the reasonable and prudent man, is not appropriate. *Shamrock Fuel & Oil Sales Co. v. Tunks,* 416 SW2d 779, 785 (Tex 1967).

Reversed and remanded for further proceedings.